The next case for argument is 22-2232, Risen Pharma v. Alzheon. Risen Pharma v. Alzheon, Inc. We're ready whenever you are, sir. Good morning, Your Honor. May it please the Court, Mark Tong for the appellant, Risen Suzhou Pharma Tech. So before us today, there are two issues. One is whether the PTAB erred in failing to properly apply the lead compound test, and the second issue is whether the PTAB violated the APA in citing the Costanza reference for the first time in the final written decision. I'll proceed first with the first issue, which I think will take most of the time, but I would like to address the second issue as well. So on the first issue, on the lead compound test, it's our position that the lead compound test is what the parties agreed should be the right standard, and while the final written decision mentions the test, it does not actually apply the first step in that test, which is the identification of a lead compound, the selection process. As noted... I mean, I guess I was very taken aback by Blue, because taking it at face value, when I turned to the board decision, I didn't expect to find anything about lead compound, and frankly, there are at least six or seven pages that talk about lead compound. I didn't see any problem with their articulation of what the test is. They cited Takeda. They cited the other case, and then your answer in gray, once Red pointed that out, seemed to be, well, they were just taking snippets, and I didn't see where they were not developing a fulsome argument. Now, the board did talk about Dillon, but they didn't talk entirely about the so-called Dillon test as opposed to the Takeda test. So what's wrong with what the board did? Are you saying there's legal error here in something the board said about lead compound? Yes. So the lead compound test, from what we see in the case law, has three steps. The first step is the selection of a lead compound. This is what... One or more. One or more, yes. We're not just... That's correct. Right. So Takeda says that it's a compound in prior art that would be most promising to modify. So that's step one. That's actually where the criticism is. It's not on the remaining steps, which is the motivation to modify. Well, how many compounds did they pick here? So they picked two compounds. Two. Okay. As the most promising. That's right. Two very closely related compounds, as it happens. Yes, but I guess... And here's really where our dispute is. Those two compounds are the only two compounds they considered. There was never a comparison done to select the most promising. And the word most is important here, as well as the word lead in lead compound test, because the entire purpose of the test is to help prevent hindsight bias, where you look at the patent at issue. With that in front of you, you go select the prior art references. But the board... And we give some deference. I'm not sure on this issue exactly where deference lies. But the board had quite a bit of discussion in terms of why these were promising candidates. So what do I miss? I mean, where is the clear error here in what the board did or did not do with respect to picking another compound? That's exactly right. Because the word most, just like more or most, is a comparative term. It's not just finding a promising compound. It's finding the most promising. That's what the case law says. And that word alone suggests there's a comparison. If you look at the cases that follow... So what are you saying under the analysis that Takeda requires that a fact finder do? You've acknowledged, Judge Bryson, that most promising doesn't need to be just one. It can be two. So does the fact finder have to dismiss or compare everything else out there in order to establish that these were promising compounds to pick as the lead compound? No, this is not. I mean, we're still under a KSR framework, which everyone knows is a flexible framework. So we're not saying it's such a rigid test that it's a rigorous compare every single compound in the prior arc. But we are saying that there needs to be some basis for selecting these two and not just looking at these two alone in isolation. You have to look at the prior arc because, again, trying to avoid hindsight, at this time there were other candidates. How much prior arc do you have to look at? The board looked at quite a lot of prior arc here, didn't it? There were 13 studies of these particular compounds that they started with. Yes, but the board did not do a comparison. For example, we raised at least five other compounds that were potential candidates. They were not discussed in the final decision. Why pick the candidates that the only compounds that were raised before the board? You raised those other five compounds before the board? Yes, it was in the briefing. So the board was aware of those other five compounds, at least, and discussed them, I guess. Did they discuss them in the decision itself? Did they recite the patent owner's argument? Did they just ignore it? Did they just not put the stuff in? I thought they typically articulate what the patent owner's arguments are. Yes, they lay out the arguments, but they don't actually do a comparison. I think that's really where the crux of the matter is. In order to say that these two compounds that the board did look at are the most promising, you have to look at the other compounds that have been raised and say, well, these are better. These are somehow more promising than the other ones that are raised. Otherwise, there isn't a step one. There isn't a comparison to select the most promising. So can you point me in the board decision where, at least, I'm looking at where they're reciting what the patent owner said. So it seems like they're putting in your arguments about why they wouldn't have selected these compounds. Are you looking for it? What did they talk about the five compounds you asked them to compare to? Give me a second. I apologize. I actually don't see that they marched through the other five. I know they were raised in the briefing, but I don't see them. Is your contention that the board entirely overlooked the comparisons that you asked it to make? Yes. Certainly, I don't see the comparisons in the final written decision. And more importantly, I don't. I mean, there's one thing whether it lists it or not. That one I don't see here, looking over the opinion. But more importantly, in the analysis portion, there is no analysis between which one is better. That's really where the crux of our issue is. On the lead compound, is it your contention that the board was required to apply lead compound analysis because that's what our case law requires? Or is the error simply that you think the parties agreed they should apply lead compound and somehow the board didn't go along with your agreement? So I think the answer is both. Where have we said that lead compound analysis is required, even if the parties don't agree to it? So when there is a new chemical compound, and I'll give you the citations, I think Daiichi 619F3 at 1352. Here in the case it says, Proof of obviousness based on structural similarity requires clear and convincing evidence that a medicinal chemist of ordinary skill would have been motivated to select and then to modify a prior compound, e.g. a lead compound. So that's one site. The next site is at Asai 533F3 at 1357. And what was the name of that second case? Sorry, it's Asai, E-I-S-A-I. Sorry, you also contend that if the parties, even if our case law doesn't require lead compound in a case like this, if the parties agree to a legal standard, then the board is compelled to apply that legal standard? Is that part of your argument as well? I think that, I mean, unless it's such a clearly erroneous matter of law to apply the standard, because the briefing was done with that standard in mind. So at bottom, is it your argument and is your challenge to what the board did predominantly its failure to discuss or to analyze your argument that there were other compounds that were more promising than the ones it selected? Is that what your beef is with the board's opinion? I think that's basically right. I mean, I think the test is a little broader than just the compounds that the parties raised, but I think as a practical matter, the argument was raised and it was not considered. Do you want to turn to the other issue now? Sure. So the other issue is that the board cited a reference, DiCostanzo, in its final written decision for an important proposition. In fact, the board cited it for, and here's the quote from... What's the patient? APPX70, which is the final written decision page 70. It says, the board said it was generally known in the art at the time of invention that when deuterium is incorporated into molecules in place of hydrogen, in most respects, the deuterated compound is very similar to all natural abundance hydrogen compound. And isn't that just a simply... Wasn't Costanza just cumulative of lots of places in the record? I acknowledge the board didn't point to it, but on that almost undisputed fact about deuterium, I think the experts talked about it. Morgan talks about it. Isn't this just cumulative of what's already in the record? It's not for one important reason, and I didn't get to raise this earlier, but, for example, Morgan was cited in our opening brief, in the appellate brief, which cited to our POPR, patent owner preliminary response, for the fact that the deuterated or isotopically modified compounds may have very, very different biological properties when they're actually used. And so there is actually a dispute on this point. This is not a given, generally known point. We certainly dispute it. We're not able to make a specific criticism on de Costanza on that point. And so, on the one hand, we don't dispute that this issue is raised. In fact, it's a pretty central issue to the IPR. But we do dispute that, given that Costanza was raised for the first time in the final written decision, there was no chance to criticize it. I mean, even all we have is the title. We don't even have the reference. But Morgan cites de Costanza for this proposition, if I recall correctly, and the first book that includes the reference to de Costanza, right? So the question is really, going back to Judge Stark's question, is, let me put it this way. Had the board put in a citation to Morgan instead of a citation to de Costanza, you wouldn't have any argument on this point, right? That's right. The point is really on de Costanza. Okay. You want to see the rebuttal slide on the other side. Okay. Thank you. Please proceed. Thank you, Your Honor. May it please the Court, Mark Feldstein on behalf of Appellee Alcion, Inc. There were great questions raised during the questioning of Pat Oner's counsel, and I can answer one of them in terms of the five compounds, I think on appendix page 40 in the final written decision. So you're talking about his criticism that the board failed to contrast or compare or deal with the compounds? Correct. Okay, so page 40. Appendix 40 addresses Pat Oner's argument that there are these other compounds that should be compared. And I think what's important to recognize here is this is not a case like Daiichi, where in Daiichi you had a metric, potency, and the court was looking at comparative potency. In Daiichi, you have a second generation of compounds that had 100, 180 times greater potency, and the court there said, if we're going to measure potency, the second generation compounds are the starting point, not the ones that are proffered by the challenger. Here, what Pat Oner puts in says, hey, there are these five other compounds. Do some sort of mechanical comparison to them. But there's no evidence, there was no argument on why these five compounds would be, like Daiichi, chosen over the compounds trimucrosate and val-APS. And so there's nothing mutually exclusive about the idea that there were other compounds out there. There are other compounds that may have been leads for other direction. Let me ask you. So you pointed out, and the board at least summarizes what the Pat Oner argues. In the citations that are here or whatever, was there a fulsome argument in comparison in what Pat Oner submitted as to why these would have been preferable to the ones selected? No, Your Honor. They're just proffered as here are other compounds. I think maybe some, there may have been an argument that, no, they're not argued as why they'd be chosen over trimucrosate and val-APS. They're presented as other things that some mechanical comparison should be made against. There is no requirement for this mechanical comparison. There is no requirement for a side-by-side. It happens in some cases where you have a metric that you're doing a comparison on, and the challenger says, hey, I'm going to pick this compound because it's potent. That doesn't apply here. Those are the cases where you have some list, some mass of compounds, and you're trying to filter through them. Here the facts are that the ART had already identified trimucrosate and val-APS as literally, quote, promising candidates. You don't need more evidence to know that they're promising candidates. Your Honor, Judge Stark, you brought up— There would be a difference, I would think, if you had, I mean, maybe the fact that there are two promising candidates out of a group of seven is, I mean, that is enough to make them lead compounds for purposes of analysis. But if you had two promising candidates among a group of 100 other promising candidates, you really couldn't say at that point that, aha, these are the two that should be identified as the lead compound, could you? Perhaps, Your Honor, but it's not the evidence we have here. We have two promising compounds. We have their patent admitting that trimucrosate is a promising compound consistent with the ART. And we have five other compounds that they said, hey, you should have made a comparison to. And then we have this massive chart that's quoted, copied in the final written decision, I think, Appendix 69 or 70, that shows just this massive universe and the implications. And that they're rejecting the idea that we have to go and do and select out the most promising candidate out of this entire universe. There's no need for that where the ART, including the admissions from the patent owner, already point to and are already using the compound as a lead. That happened in the BMS case that we cite, where the compound that was presented as the lead compound was already being used as a lead compound for further development. The hindsight issue that the lead compound analysis is preventing is going back and trying to do a retrospective analysis of the ART. What would someone have thought if they looked back at all this massive data? That's not an issue here where the ART, like in BMS, says here is something that people consider promising. Here's something that people are continuing to develop. Here is something that continues to show interest. Here is something that is being used as a lead compound already. To the extent that comparison is required by the law, you would say the comparison had already been done before this case even arose. It had been done in the prior ART and that should be sufficient under the law. Correct, Your Honor. Here, the recognition in the ART is a comparison on how did it bubble to the top? How did it bubble to the top of people's interest? How did it bubble to the top of the admitted promising compound candidate that is recognized in the patent? So what is your view of the legal situation here? Is a lead compound analysis, sort of in quotes, is that required in a case like this or particularly in this case? I think it's clearly one way to establish obviousness. I think it's in Altona where they are addressing the idea that like the teaching suggestion motivation test, it's informative post-KSR of a way to find obvious, but it's not a rigid rule. The bottom line is reasoned identification for the lead compound starting point. And what about the two cases that were cited to us, Aisai and Daichi? Did we not require as a matter of law a lead compound analysis in those cases? No, there's not a requirement as a matter of law for a lead compound with a comparative analysis. They were certainly applying... I'm a little confused because we're not talking about a comparison anymore. We're just talking about the requirement for a lead compound. So Takeda, if I can answer for Takeda. Takeda is clear. If Your Honor is asking could Dillon still apply, if that's the context. That would be another way to put it, I think. Is that what Takeda says, Dillon's an en banc decision, I believe. And Takeda says this law still applies. It makes sense to have, to look for structural similarity in certain cases where things are so close. Homologs, isomers, analogs. There's nothing closer than the two neutron difference we have here. And what Takeda says is Dillon's good, but you still have to then have a reason to make this modification. And so you don't have to, in some circumstances where the structure is so close, a homolog, an isomer, an analog. And in this case, the PTAB found the same elements, hydrogen, deuterium, two neutron difference, that Dillon is the most applicable analysis. But they did Dillon plus. They did Dillon plus Takeda, where they then looked at are there specific reasons to modify trimeprosate or val-APS to make the modifications they found there were. That's similar to this. It's essentially the second part of lead compound. So I'm hearing that as you read our case law as not absolutely requiring a, quote, lead compound analysis in this case, right? That's right, Your Honor. Okay. So putting aside our case law for the moment, what about was there not an agreement in this case to do it? And relatedly, if you wouldn't mind, if we said lead compound for whatever reason is required here, are we allowed to pick and choose through what the board found to come up with our own lead compound analysis when they say they're not doing it? I don't think you need to pick and choose. They did both analyses. They said Dillon's the most applicable. We're going to tell you why it's true under Dillon. And then at Appendix 60- I mean, it doesn't- Exactly, 66. 65 to 66, they say, here are the two tests, the two-part tests under- Do you think the board opinion is having applied the Takeda lead compound analysis? Because I did. I did, absolutely. They cite- Otsuka citing Takeda on 65 to 66, and they say it's got two parts. So they did both. They did both. You're right. But I read it as certainly applying the lead compound analysis of Takeda. It may have been a different- sort of different because the universe here was so much more limited. But you agree that they applied the lead compound? They absolutely applied the lead compound analysis. Whether or not- Sorry, just go ahead. Because I threw a lot at you. Whether or not they did both, did you, in fact, agree in front of the board that they had to do a lead compound analysis? The argument that was presented by Petitioner was a lead compound analysis, and we agreed it was applicable. I don't think that we agreed that we made any commitment or any position that Dillon couldn't also apply. But clearly, Petitioner's argument was that it was lead compound. The board, in its institution decision, raised Dillon pretty much on its own, and then the parties addressed it. But I don't think that the agreement or the common proffering of lead compound was to the exclusion of alternatives. We just proved our case below under lead compound. The board said, you know what? The Dillon plus Takeda is the closest case law, and analyzed under that also. Is there any, setting aside the names we attach to these doctrines, which I think can be mischievous in and of itself, but is there any fundamental difference between lead compound or Dillon? Aren't they doing the same thing? You look for a starting point that makes sense and that a poser would look at, and then you ask, how should I or could I modify this in a way that a poser would have expectation would work? Isn't that what we're talking about, whether we call it lead compound or whether we call it Dillon? I think that's correct, Your Honor. I think the one piece to add to what the cases are saying in terms of the first step, it needs to be a non-hindsight reason. It needs to be a reason from the art, and if the art... We oppose what we understand to be a good starting point. Exactly, Your Honor. Sometimes I think that we create names for these doctrines, and then we silo them out there, and there's no reason to do that. It seems to me that the fundamental element of what's going on is the same across these various doctrines. And that's what your cases recognize as well. They recognize, especially trying to rationalize post-KSR, it's a flexible test. Bottom line is you need a reasoned identification and a starting point. You want to turn quickly to Costanza? Sure. So Costanza is irrelevant to lead compound analysis. If the court agrees that the board did a lead compound analysis, Costanza only comes up in the context of Dillon. So Costanza is just completely irrelevant. It's a de-Costanza, right? It is de-Costanza. It was brief as Costanza. I don't know how that started. Senator Fielder, one of the Yankees, goes, not Joe Maggio. It is de-Costanza, Your Honor, absolutely. And the reliance, where de-Costanza is cited, it's cited in the context of why the board thinks that Dillon, per Takeda, is a relevant legal analysis. And the first thing that they address on why do they think Dillon's relevant is on page 64, appendix 64, that it's undisputed that deuterium is the same element as hydrogen. And then they go on that it's a two neutron difference. So in terms of whether there's structural similarity, even before the paragraph that's addressing de-Costanza, they've already identified undisputed evidence, undisputed positions, that there's structural similarity. They're the same element, two neutron difference. I haven't heard an argument from Risen that there is not structural similarity between trimeprosate and deuterate trimeprosate, val-APS and deuterate val-PS. So I haven't heard that that even matters, that you get to de-Costanza, that it even matters, any of this, because there doesn't seem to be a substantive dispute that there is structural similarity here. So your position is there was no error, even if it were harmless error? At best, it's harmless error, because there's a standalone paragraph already addressing the premise, sufficient premise to find structural similarity. But the same statement, essentially, was in Morgan. It absolutely was, Your Honor. And de-Costanza said that there is a C-site. It's a C-site for the proposition that, in most respects, it's similar. And what comes up in Risen's briefing is they talk about property differences. There may be property differences. They may speak to unexpected results. But the differences in properties aren't differences in structures. And so there's really no reason to dispute here that there's a difference in structure. And so de-Costanza is cumulative on an undisputed finding from the board that there's the same elements, two-newton difference, and the general knowledge that they're similar in most respects. It may well be a harmless error, but I'm unclear on how it's not error. I mean, why go to all the trouble of putting together a record and requiring the board to consider things on the record if they can just go ahead and pull things off a shelf that counsel didn't even know about and start relying on it as the basis for its findings? It is not clear to us, Your Honor, why de-Costanza was cited and not Morgan. It seems to be that the board was paraphrasing Morgan's citation of de-Costanza. There's a speculation, I'm sure you saw it, that maybe the patent owner beat back Morgan in an earlier stage of the proceeding because it said something about unpredictability. And the board was scared about that, so they just skipped over Morgan. But there's substantively no dispute that the structures are similar. So it's at best a harmless error because it's a tertiary point on structural similarity and it's an immaterial point on structural similarity because there's no substantive dispute they're not structurally similar. One could take a marker and cross off the de-Costanza paragraph and the decision would stand. The analysis on why Dillon makes sense would stand and the entirely separately compound analysis would stand. Thank you, Your Honor. Hi. If you have any questions for me, please ask them. Otherwise, I have two points to make. One is that counsel for Appellee said several times that there is no dispute, that there is no structural similarity. But the point here is it's not just is it structurally similar. The question is, is it obvious in light of the prior art? And as we noted in our briefing, there's a site to Morgan at page 230 on how different the properties could be. In fact, the fact that the hydrogen and deuterium differ by a neutron could make all the difference in the world in terms of how it reacts in the body and that has certainly patentability effects. And so I don't think that structural similarity is the end of the inquiry. In fact, if you look at the citation in Daiichi, this is at 1354, it says that the attribution of a compound as a lead compound must avoid hindsight bias. It must look at the state of the art at the time of invention was made to find a motivation to select. And then it goes on to say, accordingly, proving a reason to select a compound as a lead compound depends on more than just structural similarity. So structural similarity doesn't get you there. You need something more. And that's what the case law says. This is Daiichi is a different part than what I quoted in the beginning of my opening argument. And so I think that there is still error in the application of the compound test. Thank you.